Argued July 9, decided July 16, 1912.

## WOLF v. HOUGHAM.

[125 Pac. 301.]

PLEADING—DEFENSES—NECESSITY OF PLEADING.
1. A defense, not pleaded, canont be urged.

SALES—ACTIONS FOR BREACH—REMEDY OF BUYER.
2. A seller of hops cannot excuse his non-performance by proof that the hops raised were of a quality inferior to that stipulated for in the contract; the buyer having his option to accept such hops in satisfaction of the contract.

TRIAL—INSTRUCTIONS—APPLICABILITY TO PLEADINGS.
3. A contract for the sale of hops from a specified farm stipulated. that a previous contract was to be satisfied first. The seller failed to perform, and, on suit by the buyer, set up in avoidance the buyer's failure to comply with his agreement to make advances. *Held* that, the seller having failed to plead as an excuse for non-delivery the delivery of the hops on the first contract, an instruction authorizing a verdict for the buyer, unless he failed to make the stipulated advances, was correct.

APPEAL AND ERROR—REVIEW—HARMLESS ERROR.

4. Where a verdict was for $2,200, an error involving about $20 is so insignificant that it will not be considered.

From Marion:  PERCY R. KELLY, Judge.

Statement by MR. JUSTICE MOORE.

This is an action by Adolf Wolf and Julius C. Wolf, partners doing business under the firm name and style of A. Wolf & Son, against C. R. Hougham and Joseph J. Keber to recover money. From a judgment for plaintiffs, the defendants appeal.

It is alleged in the complaint, in effect, that at all the times stated therein Adolf Wolf and Julius C. Wolf were and are partners as Wolf & Son; that during such time the defendants, C. R. Hougham and Joseph J. Keber, were engaged, *inter alia,* in buying and selling hops; that defendants represented to plaintiffs that they had purchased from J. R. White and others a crop of hops, and thereupon the parties hereto entered into a written contract, the material parts of which follow, to wit:

"Agreement, dated 23d day of July, 1909, between C. R. Hougham and Joseph J. Keber, of Marion County, State of Oregon, called herein the seller, and A. Wolf & Son, called herein the buyer, concerning the hop crop of the seller for the year 1909 and the sale of hops, not the product of the first year's planting, bright, even color, fully matured, free from mold or vermin damage, cleanly picked, properly dried and cured and put up in merchantable order and condition, in bales weighing from 185 to 210 pounds each (tare 5 pounds per bale to be deducted), herein called 'contract hops,' to be grown, harvested and prepared for market by the seller on that certain hopyard, herein called the 'hopyard,' situated on that certain farm in Marion County, State of Oregon, about three miles northeast of Mount Angel, Oregon, on which land there are about 56 acres planted in hops and owned by J. R., V. J., M. J., and G. H. White.

"First.    The seller * * does hereby bargain and sell, and he does agree to deliver to the buyer in one lot f. o. b. cars at Mount Angel, in the State of Oregon, between

October 1st and November 1st of the year 1909 twenty thousand (20,000) pounds, net weight, of contract hops from the hopyard and to give 20 days' notice in writing to the buyer after the entire crop is ready for delivery and to make full delivery to the buyer before making any other delivery from the hopyard. * * This contract is taken subject to a contract made about a week before this for 20,000 lbs., which contract must be filled first.

"Second. The buyer agrees to purchase twenty thousand (20,000) pounds of contract hops of the crop of hops raised by the seller upon the hopyard in the year 1909 and to accept and receive the same when delivered in pursuance of this agreement, and to pay therefor the sum of sixteen (16) cents per pound, that is to say: To pay eight hundred ($800.00) dollars at the time of signing hereof; * * and ($1,000.00) dollars during the picking season as the same shall be actually required and the balance at the time of the acceptance and receipt of said hops; * * all payments to be made by check of money at the Bank of Mt. Angel, in the County of Marion, State of Oregon, upon ten (10) days' written request therefor by the seller. * *

"Third. Should the seller neglect or fail to do anything which as a careful husbandman he should do in order to produce contract hops, and if by reason thereof, or for any cause the hops raised shall be inferior to contract hops, the buyer shall have the right and privilege of receiving and accepting so many thereof as are contract hops at the contract price and the balance of the quantity contracted at a reduction in price equal to the difference in value between the hops tendered and contract hops, * * but should the seller and the buyer fail to agree upon a price at which the inferior hops shall be accepted in fulfillment of this contract, then in that event the seller agrees to return all advances heretofore made * * to the buyer upon demand.

"Fourth. * * It is therefore further agreed by and between the parties hereto, that should the seller make default in this agreement and by reason of such default, the buyer not being in default 20,000 pounds of contract hops be not delivered in pursuance of this agreement, the buyer may recover of the seller damages for the seller's breach of this agreement, and in such event it is

hereby agreed that the difference between the contract price and the market value at the time of delivery of 20,000 pounds of contract hops, together with all advances, * * are hereby fixed as the liquidated damages which the buyer shall recover from the seller for such breach. * *

"In witness whereof, the parties constituting the seller have hereunto set their hands and the buyer has hereunto subscribed their names this, the day and year first above written.

"C. R. Houghman.          [Seal.]
"Jos. J. Keber.          [Seal.]
"Adolf Wolf & Son.          [Seal.]

"Witnessed by:
        "Tom Shortell,
        "Joseph Bruch."

That on July 23, 1909, pursuant to the terms of such contract, plaintiffs advanced to defendants $800; that on the 13th, 20th, and 24th of September of that year plaintiffs offered to make such further advances of money as were necessary, but the defendants refused to accept the offers, and plaintiffs were then, and prior and subsequent thereto, ready, willing, and able to make such payments and fully to perform their part of the agreement; that the market price of contract hops on November 1, 1909, at the place of delivery was 24 cents per pound; that the defendants failed and refused to deliver to plaintiffs any of the hops grown on such farm, or to return the money advanced, whereby they lost $800 so paid and the further sum of $1,600, the latter sum being the difference between the contract price of 16 cents and the market price of 24 cents on 20,000 pounds of hops, no part of which sums has ever been paid. Judgment was demanded for $2,400.

The answer admitted the relation and pursuits of the respective parties; and that they executed the contract referred to, but denied all the other averments of the

complaint. For a further defense, it is alleged that plaintiffs failed and refused to keep or perform their part of the agreement, or to make the advances required. The reply put in issue the allegations of new matter in the answer, and the cause being tried resulted in a verdict and judgment for plaintiffs in the sum of $2,208.67 and the defendants appeal.                    AFFIRMED.

For appellants there was a brief over the names of *Messrs. Seitz & Seitz* and *Messrs. Rauch & Senn,* with oral arguments by *Mr. M. W. Seitz* and *Mr. L. Rauch.*

For respondents there was a brief over the names of *Mr. John A. Carson* and *Mr. George G. Bingham,* with an oral argument by *Mr. Carson.*

MR. JUSTICE MOORE delivered the opinion of the court.

1, 2. It is contended by defendants' counsel that an alleged failure to deliver "contract hops" did not constitute such a breach of the contract as to authorize a recovery of the sum of money advanced, or of any damages asserted to have been sustained; for the parties had stipulated that, if the farm referred to produced hops of an inferior quality, they were to have been accepted at a reduced rate. It is difficult to understand how this question is involved. The breach of the agreement assigned in the complaint is the declared failure of the defendants to deliver any hops. The excuse for the nonperformance set forth in the answer is the alleged neglect and refusal of the plaintiffs to advance the sums of money specified for in the contract. In order to invoke the legal principle insisted upon, the answer should have stated that in the year 1909 the farm referred to produced hops of an inferior quality; that defendants offered to deliver, at the then market price of —— cents per pound, the hops so grown to the plaintiffs, who thereupon refused to accept any part thereof. Besides

this, if the plaintiffs were willing to accept hops produced as of the quality and the condition specified in the contract, the defendants cannot be heard to object thereto. *Livesley* v. *Johnston,* 45 Or. 30, 53 (76 Pac. 13, 946: 65 L. R. A. 783: 106 Am. St. Rep. 647).

3. It will be remembered that the written agreement excluded from its provisions the first 20,000 pounds of hops produced on the farm in the year 1909. Over objection and exception, the plaintiffs were permitted to offer testimony tending to show that no part of the quantity last referred to had been delivered to the party entitled thereto, with whom the defendants settled by paying the damages sustained by a breach of the agreement in the particulars mentioned. Based on this evidence, the jury were instructed as follows:

"In considering the meaning of the contract which is admitted to have been entered into, it becomes the duty of the court to construe such contract; and it is the construction of this court that the conract, for the purposes of this case, is a contract for the sale of a certain quantity of hops, subject to the fulfillment of a certain other contract therein mentioned, which was entered into about a week before this contract was entered into. It must be shown that the rights under the contract, adverted to as being the one first entered into, have been met. If, under the evidence, the subject of this contract which is in evidence was exhausted by that former contract, then the plaintiffs cannot recover in this case; for their contract is subject to the terms of the contract first entered into, and subject to the fulfillment of that conract. The rights under the contract entered into between the plaintiffs and the defendants are to be considered by you in this light. It is a contract for the sale of 20,000 pounds of hops at 16 cents per pound; and if the plaintiffs have shown by a preponderance of the evidence that they have fulfilled their part of this contract, and that the defendants have made the breach alleged in the complaint, namely, a failure to fulfill their part of the contract by delivering the hops, as agreed upon in the contract, within the time specified, you should find for the plain-

tiffs. The defendants, however, in this case hold the affirmative of the allegations contained in their answer, which, briefly stated, consist of the allegations of a breach of this contract upon the part of the plaintiffs. The contract is one which provides that $1,000 shall be paid, as required, for picking purposes; and if you find from a consideration of all the evidence, gentlemen of the jury, that the plaintiffs have made a breach of that provision of the contract, and have failed to comply with it, you should find for the defendants in the case."

4. Exceptions having been taken to these parts of the charges by defendants' counsel, it is maintained that errors were committed in using the language thus employed. It appears from the bill of exceptions that the defendants offered evidence tending to prove that the entire quantity of hops produced in the year 1909 on the farm mentioned was only 37,365 pounds. If from this number there be deducted the first 20,000 pounds of hops, the remainder is 17,365 pounds. It is alleged in the complaint that, by reason of the defendants' failure to deliver 20,000 pounds of hops to the plaintiffs, they sustained damage to the extent of 8 cents per pound, or in the sum of $1,600. If the answer had averred that there was produced only 37,365 pounds of hops, of which quantity the plaintiffs could be entitled to no more than 17,365 pounds, the greatest sum that could have been allowed them, if a finding had been made according to the assumed allegation, would have been $1,389.20, to which should have been added the money advanced, or $800, making $2,189.20, or $19.47 less than the sum awarded by the jury. The answer did not contain the averment suggested, and, in the absence thereof, the instructions complained of were applicable to the facts involved, except that in the first instruction, hereinbefore quoted, the sum of $800 was omitted, to which the plaintiffs would have been entitled, in any event, on the theory assumed. But this omission may have been fully explained in the general

charge.  However that may be, the defendants cannot complain of any error in this respect.  The difference of $19.47 is so insignificant, when compared with the sum involved, as to be almost trifling, even if the assumed issue had been made.

From a careful examination of the entire evidence, which has been made a part of the transcript, we do not think any substantial error was committed.  It follows that the judgment should be affirmed; and it is so ordered.

AFFIRMED.